IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ALEXANDER S. NORRED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:24-cv-459-CWB |
| | ) | |
| MATTHEW BERGER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

Alexander S. Norred initiated this civil action by filing a Complaint on August 1, 2024 against Matthew Berger—a deputy with the Lee County Sheriff's Department.  (*See* Doc. 1).  Norred asserts claims for malicious prosecution and false arrest under both 42 U.S.C. § 1983 and Alabama state law due to a traffic stop that resulted in an immediate arrest and the ensuing execution of a criminal complaint.  (*See id*. at pp. 3-5).  Berger in turn is asking the court to enter judgment in his favor as to certain claims based solely upon the pleadings.  (*See* Doc. 22).  For the reasons set out below, the court concludes that the motion is due to be granted.

### II.    Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is evaluated under the same standard as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018) ("The standards for reviewing decisions on motions to dismiss and motions for judgment on the pleadings are the same: whether the count stated a claim for relief.") (internal

quotations omitted).  To determine whether a claim for relief has been stated, the court reviews

a complaint under the familiar standard of Fed. R. Civ. P. 8(a)(2), *i.e.,* the complaint must contain

"a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint

therefore "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

   "In determining whether a party is entitled to judgment on the pleadings, we accept as true

all material facts alleged in the non-moving party's pleading, and we view those facts in the

light most favorable to the non-moving party."  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335

(11th Cir. 2014).  "Judgment on the pleadings is proper when no issues of material fact exist, and

the moving party is entitled to judgment as a matter of law based on the substance of the pleadings

and any judicially noticed facts."  *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*,

592 F.3d 1237, 1255 (11th Cir. 2010) (quoting *Andrx Pharm., Inc. v. Elan Corp.*, 421 F.3d 1227,

1232–33 (11th Cir. 2005)); *see also Perez*, 774 F.3d at 1335.

III.    **Factual Background**[1]

   At approximately 11:30 p.m. on July 30, 2022, Norred was subjected to a traffic stop

conducted by Berger.  (*See* Doc. 1 at p. 3, ¶ 5).  Norred asked the reason for the stop, but Berger

---

[1]  The facts as stated herein are taken from the allegations in the Complaint (*see* Doc. 1) and from
exhibits attached to Berger's motion.  (*See* Docs. 23-1, 23-2, 23-3, 23-4, & 23-5).  The court notes
that Norred expressly "reassert[ed] all portions of" Berger's recitation of the facts, including
citations to the exhibits.  (*See* Doc. 25 at p. 1).  The recited facts thus are undisputed and will
serve as the operative facts for purposes of evaluating the motion for judgment on the pleadings.
*See Perez*, 774 F.3d at 1335.

did not provide an explanation.  (*See id*. at p. 3, ¶¶ 6-7).  Berger instead directed Norred to get out

of his vehicle.  (*See id*. at p. 3, ¶¶ 9-10).  Norred did not do so, and Berger called for backup.

(*See id*. at p. 3, ¶¶ 11-12).  When backup arrived, Berger removed Norred from the vehicle, laid

him on the ground, put him in handcuffs, and placed him under arrest.  (*See id*. at p. 3, ¶¶ 12-13,

& p. 5, ¶ 22).[2]

Norred was released on July 31, 2022 after posting a $1,000 bond.  (*See* Doc. 23-4).

On August 1, 2022, a criminal complaint was filed against Norred for obstructing government

operations.  (*See* Doc. 23-1).  Norred remained released on bond until the charge ultimately was

dismissed.  (*See* Doc. 1 at p. 4, ¶ 16 & Doc. 23-5).

Norred now alleges that Berger violated his Fourth Amendment rights and seeks damages

under 42 U.S.C. § 1983 on theories of malicious prosecution (Count I) and false arrest (Count II).

Norred further alleges that Berger's conduct constituted malicious prosecution and false arrest

under Alabama state law (Counts III & IV).

## IV.    Analysis

Berger seeks judgment on the pleadings as to Counts I, III, and IV.  (*See* Doc. 22).[3]  As to

Count I, Berger asserts that judgment on the pleadings is warranted due to qualified immunity.

(*See id*. at p. 1, ¶ 1).  As to Counts III and IV, Berger asserts that judgment on the pleadings is

warranted due to "State Immunity pursuant to Art. I, § 14, *Const. of Ala. 1901*."  (*See id*. at p. 1-2,

¶¶ 2-3).  Because the court agrees that immunity bars Counts I, III, and IV, it will not reach

Berger's additional argument that Count IV is time barred.  (*See id*. at p. 2, ¶ 3).

---

[2]  Berger's briefing states that Norred was arrested on July 30, 2022 (*see* Doc. 23 at p. 5) but also states that the arrest occurred on July 31, 2022. (*See id.* at p. 17).  Such inconsistency is immaterial for purposes of the issues presently before the court.

[3]  Berger does not seek judgment on the pleadings as to Count II.

**A.    Qualified immunity entitles Berger to judgment on the pleadings as to Count I.**

In Count I, Norred asserts that his arrest and detention constituted an "unreasonable seizure under the Fourth Amendment" because Berger "knew or should have known that there existed no arguable probable cause for the complaint, yet nevertheless signed and issued a warrant for [his] arrest." (*See* Doc. 1 at p. 6, ¶¶ 27-28). Berger argues in response that the claim is barred by qualified immunity. (*See* Doc. 23 at pp. 7-12).

"Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817-19 (1982)). Courts have developed a burden-shifting framework to assess whether qualified immunity applies. First, the government official bears the burden of showing that the disputed conduct fell within their "discretionary function." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (citing *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (2003)). If the government official makes that showing, "the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity" by demonstrating both that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* at 1264 (emphasis in original).

**1.    Berger was acting within his discretionary authority.**

A government official acts within his discretionary authority for purposes of qualified immunity when "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Harland*, 370 F.3d at 1265. "In applying each prong of this test, we look to the general nature of the defendant's action,

4

temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* at 1266-67 (finding that a public school teacher acted within her discretionary authority when she chastised and reported a student, because classroom management is a "legitimate job-related function" and "the ways in which she attempted to pursue this job-related goal ... —examined on a general level rather than in this specific application—were legitimate prerogatives of her job"); *see also Sweatt v. Bailey*, 876 F.Supp. 1571, 1576 (M.D. Ala. 1995) (analyzing whether "controlling persons after arrest" was within a police officer's duties at the discretionary authority stage and concluding that allegations of using unnecessary force were "more properly considered in the second step of the [qualified immunity] test").

Count I seeks to hold Berger liable for instituting a criminal prosecution by signing a criminal complaint and an arrest warrant. (*See* Doc. 1 at pp. 5-6, ¶¶ 26-29). Under the *Harland* test, all such conduct was within Berger's discretionary authority. First, initiating criminal proceedings undoubtedly is a "legitimate job-related function" of a deputy sheriff. *Harland*, 370 F.3d at 1265. Second, the "general nature" of the conduct—executing a criminal complaint and arrest warrant—was a "means [] within his power to utilize." *Id.*

In opposing application of qualified immunity, Norred argues that Berger "act[ed] outside of his scope as deputy sheriff" because he conducted the traffic stop without reasonable suspicion. (*See* Doc. 25 at p. 2). More specifically, Norred asserts as follows:

> With this Defendant still unable to articulate a reason for stopping this Plaintiff, there can be NO specific and articulable facts. Without any facts to support the stop, there can be no reasonable suspicion. Without reasonable suspicion, this Defendant acted outside his lawful authority as codified by the Alabama legislature in stopping and detaining this Plaintiff. As such, this is a plain, clear and concise example of a violation of this Plaintiff's 4th Amendment rights.

(Doc. 25 at pp. 2-3).  But Norred's reasoning misconstrues the "discretionary authority" standard.

At the discretionary authority step, courts "temporarily put[] aside the fact that [the conduct]

may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an

unconstitutional extent, or under constitutionally inappropriate circumstances" and look only at

the general nature of the conduct.  *Harland*, 370 F.3d at 1266.  Whether or not the traffic stop

and subsequent criminal complaint/arrest warrant were lawfully based on probable cause is

irrelevant to whether the actions generally fell within Berger's discretionary authority.  *See, e.g.,*

*Godby v. Montgomery Cnty. Bd. of Educ.*, 996 F.Supp. 1390, 1401 (M.D. Ala. 1998) ("A defendant

is not failing to act within his discretion merely because he or she is doing something unlawful.

… It is perfectly logical for a court to find that someone who was acting illegally was acting within

his discretionary authority.").

Because the conduct for which Norred seeks to hold Berger liable in Count I arose from

a "legitimate job-related function" and "through means that were within his power to utilize,"

Berger's conduct was within his discretionary authority for purposes of a qualified immunity

analysis.  *Harland*, 370 F.3d at 1265.  With the first-prong of the qualified immunity test being

satisfied, the burden shifts to Norred to demonstrate that Berger violated a clearly established

constitutional right.

        **2.**       **Norred has failed to plead a requisite constitutional violation.**

To make out a claim for malicious prosecution under 42 U.S.C. § 1983, Norred must show

(1) "a violation of his Fourth Amendment right to be free of unreasonable seizures" and (2) "the

elements of the common law tort of malicious prosecution."  *Williams v. Aguirre*, 965 F.3d 1147,

1157 (11th Cir. 2020) (quoting *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019)).

Malicious prosecution claims only apply to unreasonable seizures that were made "pursuant to

legal process" such as "warrant-based seizures" and "seizures following an arraignment, indictment, or probable-cause hearing." *Id.* at 1158 (quoting *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)).  Malicious prosecution claims do not apply to seizures that <u>precede</u> legal process. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004) (holding that plaintiff's arrest—which occurred before a warrant, arraignment, or indictment—could "not serve as the predicate deprivation of liberty" for a malicious prosecution claim)[4]; *Williams*, 965 F.3d at 1167 (allowing a malicious prosecution claim when the plaintiff had been detained for sixteen months pursuant to an arrest warrant); *Martin v. Miami Dade Cnty.*, No. 23-10841, 2024 WL 1434329 at *7 (11th Cir. Apr. 3, 2024) (holding that "warrantless arrests were on-the-spot seizures and without legal process" and could not give rise to a malicious prosecution claim).[5]

In Alabama, "[a]ll criminal proceedings shall be commenced either by indictment or by complaint." Ala. R. Crim. P. 2.1.  A criminal proceeding was commenced against Norred with the filing of a criminal complaint on August 1, 2022. (*See* Doc. 23-1).  But Norred does not allege any seizure occurring on or after August 1, 2022.  And although Norred had been arrested and detained on July 30 or 31 of 2022 (*see* Doc. 23 at pp. 5, 17), those events "cannot serve as the predicate deprivation of liberty" for a malicious prosecution claim because they occurred <u>before</u> legal process was instituted. *See Kingsland*, 382 F.3d at 1235.  Stated most simply, Norred has not alleged facts that would show a seizure <u>pursuant to legal process</u> so as to potentially establish a constitutional violation and prevail on a malicious prosecution claim brought under 42 U.S.C. § 1983.  Accordingly, qualified immunity precludes liability under Count I.

---

[4] *Kingsland* was abrogated on other grounds by *Williams v. Aguirre*, 965 F.3d 1147, 1159 (11th Cir. 2020).  However, *Williams* did not abrogate the *Kingsland* holding that a seizure occurring before legal process cannot serve as the basis for a malicious prosecution action.

[5] Here, no warrant had been issued at the time of Norred's arrest. (*See* Doc. 23-2).

### B.    State immunity entitles Berger to judgment on the pleadings as to Counts III and IV.

In Count III for "Malicious Prosecution," Norred seeks to hold Berger liable under Alabama law for signing a criminal complaint against him "maliciously" and "without arguable probable cause." (*See* Doc. 1 at p. 9, ¶ 49). In Count IV for "False Arrest," Norred seeks to hold Berger liable under Alabama law for "caus[ing] [his] arrest." (*See* Doc. 1 at p. 10, ¶ 55). Berger contends that both counts are barred by absolute State immunity. (*See* Doc. 23 at p. 13).

It is settled that Alabama law provides for two forms of immunity: State immunity and State-agent immunity. *See Ex parte Donaldson*, 80 So. 3d 895, 900 (Ala. 2011) ("State immunity and State-agent immunity are 'two different forms of immunity,' and those who qualify for State immunity 'are treated differently under Alabama law' because they are constitutional officers.") (quoting *Suttles v. Roy*, 75 So. 3d 90, 93-94 (Ala. 2010)). As to State immunity, "Article I, § 14, Const. of Ala. 1901, states that 'the State of Alabama shall never be made a defendant in any court of law or equity.'" *Donaldson*, 80 So. 3d at 897. As constitutional officers listed under Article V, § 112, Const. of Ala. 1901, sheriffs generally "enjoy State immunity under § 14 from actions against them in their individual capacities for acts they performed in the line and scope of their employment." *Id.* at 897-98 (quoting *Suttles*, 75 So. 3d at 94). "Suits against such officers for actions taken in the line and scope of their employment inherently constitute actions against the [State of Alabama], and such actions are prohibited by § 14." *Id.* at 898 (quoting *Ex parte Shelley*, 53 So. 3d 887, 895 (Ala. 2009)).[6]

---

[6] Exceptions to State immunity do exist, but they only apply when injunctive or declaratory relief is sought. *Ex parte Haralson*, 853 So. 2d 928, 932 (Ala. 2003) (explaining that State immunity does not preclude actions against an official that are brought "(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the

The State immunity afforded sheriffs extends to deputy sheriffs because "the acts of the deputy sheriff are [considered] the acts of the sheriff." *Donaldson*, 80 So. 3d at 898 (quoting *Alexander v. Hatfield*, 652 So. 2d 1142, 1144 (Ala. 1994)). Therefore, "[b]ecause sheriffs are constitutional officers and because deputy sheriffs act on behalf of sheriffs as alter egos, a claim for monetary damages made against a deputy sheriff in his or her individual capacity is barred by the doctrine of State immunity whenever the acts that form the basis of the alleged liability were being performed within the line and scope of the deputy sheriff's employment." *Id.* at 899.

A deputy sheriff's conduct is categorically within the line and scope of his employment if it falls within an enumerated duty—even if the deputy sheriff does not follow established procedure. *See Ex parte Davis*, 930 So. 2d 497, 501 (Ala. 2005). In *Davis*, for example, the plaintiff sued a deputy sheriff for "fail[ing] to comply with the proper procedures for conducting a search and in performing an arrest." *Id*. Specifically, the plaintiff alleged that the deputy sheriff drove onto his property, did not produce a search warrant, searched his vehicles unlawfully, and "pushed [him] to the ground, handcuffed him, and placed him in the back of" the deputy sheriff's vehicle. *Id*. at 498. The plaintiff was charged with resisting arrest and obstructing governmental operations but was later acquitted. *Id*. at 498-99. The plaintiff then sued the deputy sheriff for damages, but the Alabama Supreme Court found that State immunity afforded protection because 1) "[c]onducting searches and performing arrests fall within the statutory duties of a sheriff," 2) the plaintiff conceded that the deputy sheriff's conduct was "during the course of his duties," and 3) the plaintiff did "not allege that [the deputy sheriff's] actions were undertaken for some personal motive to further some personal interest." *Id*. at 501.

---

Declaratory Judgment Act if he is a necessary party for the construction of the statute") (quoting *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987)).

*See also* Ala. Code § 36-22-3(a)(4) ("It shall be the duty of the sheriff: to, with the assistance of deputies as necessary, ferret out crime, apprehend and arrest criminals and, insofar as within their power, secure evidence of crimes ... and present a report of the evidence so secured to the district attorney."); *compare Ex parte Haralson*, 853 So. 2d 928, 932-33 (Ala. 2003) (finding record insufficient to apply State immunity to a deputy sheriff because it was "conceivable that [the plaintiff] could prove facts that would show that at the time of the accident [the deputy sheriff] was on a personal errand or otherwise had departed from the line and scope of his employment").

Normally, a deputy sheriff's conduct while performing an enumerated duty may be deemed outside the scope of employment only if there is evidence of some personal animus. *See, e.g., Cooper v. Smith*, No. 1:12-cv-889, 2013 WL 252382 (M.D. Ala. Jan. 23, 2013). In *Cooper*, the complaint alleged that the deputy sheriffs had "ramm[ed]" the plaintiff's vehicle, "smashed into" the plaintiff's vehicle, and "physically beat" the plaintiff when they removed him from the vehicle while conducting a traffic stop. *Id*. at *1. The plaintiff alleged that the only reason for the deputies' conduct was "personal animus" against him. *Id*. Even though apprehending criminals and conducting traffic stops fell squarely within the deputies' enumerated duties, the court found that the deputies were <u>not</u> protected by State immunity under the circumstances alleged. *Id*. at *2 (explaining that "savagely beat[ing] a man for no reason other than a personal grudge" falls outside the scope of employment).

Norred concedes that Berger's conduct was "in his capacity as a deputy sheriff" but argues that Berger acted beyond his authority because he "could not, would not and never did state a reason whatsoever for stopping [Norred's] vehicle," that "[w]ithout any facts to support the stop, there can be no reasonable suspicion," and that "[w]ithout reasonable suspicion, [Berger] acted outside his lawful authority." (*See* Doc. 25 at p. 2). That argument misapprehends the

standard for determining line and scope of employment for purposes of State immunity. Again, courts generally look to the <u>type</u> of conduct rather than to the manner of the conduct. *See Davis*, 930 So. 2d at 501 (finding that the deputy sheriff was acting within the scope of his employment because "[c]onducting searches and performing arrests fall[s] within the statutory duties of a sheriff" and omitting consideration of allegations that the deputy sheriff searched the property without a warrant). Courts only look to the <u>manner</u> of the conduct if there are allegations of personal animus. *See id.* (noting that the plaintiff had <u>not</u> "allege[d] that [the deputy's] actions were undertaken for some personal motive"); *Cooper*, 2013 WL 252382 at *2 (finding allegations that deputy sheriffs were "acting out of personal animus," if true, would mean the deputies acted outside the scope of their employment). Here, Norred seeks to hold Berger liable for conduct that undisputedly falls "within the line and scope of his employment," and the Complaint lacks allegations of any colorable personal animus. State immunity therefore applies to protect Berger against the state law claims asserted in Counts III and IV. *See Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996).

## V.    Conclusion

For the reasons stated above, it is hereby **ORDERED** that the pending motion for judgment on the pleadings (Doc. 22) is **GRANTED** such that Counts, I, III, and IV are now **DISMISSED WITH PREJUDICE**. This action shall proceed solely on the claim asserted in Count II for "False Arrest" under 42 U.S.C. § 1983.

**DONE** this the 2nd day of May 2025.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**